NORTHERN DISTRICT OF NEW YORK

DISTRICT COURT

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | MEMORANDUM IN AID OF SENTENCING SUBMITTED ON BEHALF OF DEFENDANT KHAN |
| VS. | |
| ROHAIL KHAN, | DOCKET NO: 5:24-CR-391 |
| DEFENDANT. | HON. BRENDA K. SANNES |

---

The following Memorandum in Aid of Sentencing of the defendant, Rohail Khan, is being submitted by David A. Longeretta Esq. attorney for the Defendant, Rohail Khan's application for a downward departure from the advisory guidelines and mandatory minimum sentence sufficient to qualify the Defendant for a sentence that is consistent with the sentencing factors contained in 18 U.S.C 3553(a). The Defendant respectfully requests that this Honorable Court consider a sentence of probation supervision for the defendant.

On September 25, 2024, the Defendant was charged with a criminal information charging the Defendant with one count of Deprivation of Rights under Color of Law in violation of Title 18 U.S.C. section 242. The criminal information stems from an incident which occurred in the Midstate Correctional Facility on April 13, 2023, where the Defendant, as a participant, albeit a minor participant, deprived an inmate of his constitutional right to be free from excessive force, i.e. physical bodily strikes, while being placed on the prison wall with his hands placed over-head, and with his feet spread apart. This is known to correctional officers within the Department of Corrections and Community Service, as "being placed on the wall".

The inmate was new to this particular unit in the Midstate Correctional facility, and was serving his sentence for a sexual crime against a 12 year old girl. The inmate's initials are J.B. The placing of J.B. "on the wall" was the idea and plan of another correctional officer Michael Williams. CO Williams, on the morning in question, stated to CO Afficiano,

CO. Montanari, and the Defendant, words to the effect that there is a new inmate on the ward, who is in for pedophilia, and this is what **I'm going to do to him**. CO Williams then proceeded to say he was going to call him out of his room, place him "on the wall" and "tune him up". CO Williams also stated, "I need you guys to back me up". Tuning up an inmate, in the world of corrections is an indication to use physical force against an individual to send a non-verbal message that the CO's are in charge of said facility, and that the inmate is to follow the verbal commands of the Officers.

Thereafter, at approximately 1:00am, after the inmate count was complete, CO Williams, called J.B. out of his assigned cell/room, placed him "on the wall", facing the wall, with his arms and feet spread apart, and began to physically assault inmate J.B. multiple times, while yelling at the inmate, "What crime did you commit" until J.B. responded with "I raped a 12 year old". None of the other Correctional Officers present intervened despite having a duty to do so. The most senior CO, CO Montanari, did not stop the unconstitutional assault, and participated in the same, striking inmate J.B. in the torso. The defendant, who is trained in the area of mixed martial arts, and who is trained on how to strike an individual and deliver painful blows, was the third to assault the inmate, however this defendant, did not strike the inmate with any degree of force that would cause pain or injury to the inmate. Due to a lack of reasonable judgment, and feeling pressure and coercion from Officer Williams, the Defendant did go through the motions of striking the inmate, where he made offensive unjustifiable contact with inmate J.B., but not with sufficient force to cause any bodily pain. The defendant also kicked the inmate in his leg, again not with significant force to cause any injury to the inmate. The fourth CO, Alfassio, did not participate in the assault of J.B. but he also failed to intervene. Shortly thereafter, CO Williams then again assaulted the inmate, which caused the inmate to go to the ground, and CO Williams continued to strike inmate J.B. after he was on the ground. As a result of the secondary round of assaults by CO Williams, the inmate then began to indicate that he felt pain from said blows of CO Williams.

After this unconstitutional assault, the inmate was returned to his cell, and the Correctional Officers separated and returned to their posts. Thereafter, and unbeknownst to Defendant Rohail Khan, CO Williams then ordered the inmate JB, to walk the halls of said dorm, and loudly announce through the wards (4E and 4F), his name and what he was incarcerated for. The only reason the defendant Khan, can think as to why CO Williams did this was to let the other inmates on the ward know what J.B was incarcerated for, thus placing inmate J.B.'s safety in jeopardy from the other incarcerated individuals. The Defendant, Rohail Khan, had no prior knowledge of, nor did he have anything to do with this public broadcasting of J.B.'s conviction to the other inmates. The other 3 CO's then told CO Williams that the forcing of the inmate to publicly announce his conviction was entirely wrong, and CO Williams responded with: "I know I was wrong, but I was too angry".

The 4 correctional officers were then ordered to provide a compelled statement as to what transpired on April 13, 2023, and prior to providing each individual statement, the defendant was told by CO Williams, to lie about what happened for there is no video in the area where the assault took place and the CO's did not have body worn cameras at said time.  All CO's, including the Defendant herein, failed to be truthful during said interrogation.  Again, this was not the Defendant's idea to be un-truthful during the interrogation, but the defendant failed to utilize his better judgment and listened to his fellow officer's mis-guided advice and direction.  The defendant again felt pressured by his fellow officers and feared repercussions, if he went against the others despite the defendant knowing better.

The Defendant has been personally struggling with his participation in this assault for he has dedicated his educational life, and professional life, in the field of proper and lawful, law enforcement.  The Defendant had future plans to find gainful employment with the Department of Homeland Security due to his law enforcement background as well as his being fluid in multiple languages.

The defendant quickly acknowledged his guilt in the matter and entered his guilty plea to the single count information before the Hon. Brenda Sannes on October 29, 2024, and for the very first time since this incident took place, did the defendant feel some personal and moral relief for his acceptance of responsibility for his actions.  What has also been disturbing and troubling to the Defendant is the extremely confusing and contradictory instruction he received on his first day on the job, after completing his training, where his supervisor, told the incoming  class of CO's (including the defendant Khan) to "**forget all your training**, in here you always back your fellow officers".  This has been a very disturbing "order" provided to the defendant, and presumably to the other new CO's.

What is even more troubling is the recent events which have occurred in another local correctional facility (Marcy Correctional Facility) where a number of CO's are alleged to have beaten an inmate to death on December 9, 2024.  The Defendant's attorney is very familiar with the events in said facility for I am representing one of the CO's involved in said matter, and I have watched the disturbing body warn camera video of said assault in detail.  It is the hope of said attorney, as well as the defendant herein, that when considering the facts of this instant case, and the sentencing options available to the Court, that the public outcry, though justified, does not negatively impact this case where the defendant has accepted responsibility for his actions, but played a relatively minor role in this constitutional violation of inmate J.B.'s rights.  Defendant Khan has become aware of the sentencing of one of the co-defendants in this matter, CO Brandon Montanari, (sentence of 36 months), and Defendant Khan is hoping that, given his mitigating factors the Court will consider his request for a probationary sentence.

Not only has the defendant Khan, accepted responsibility for his relatively minor, yet inculpable role in this matter, he has taken steps to attempt to understand why he went against his moral compass, and his professional training by seeking professional counseling services to assist him to mentally come to grip with what he had done.  Again, this is an incident which has weighed heavily on the Defendant, who has expressed his extreme remorse for his actions.  Such conduct goes against the very fiber of the Defendant and his upbringing.

## ADVISORY SENTENCING GUIDELINES

Title 18 U.S.C. Section 3553(a)(2) lists the following purposes of sentencing:

   a. Retribution;
   b. Deterrence:
   c. Incapacitation; and
   d. Rehabilitation.

When the Court considers the totality of the circumstances present in this instant case, a district court may impose no greater punishment than is necessary to further these statutory objectives of sentencing.  The Sentencing Reform Act of 1984, Pub. L. No. 98-473, section 211, 98 Stat. 1987, 1989-90 (1984) requires that courts' : "impose a sentence sufficient, buy not greater than necessary," to comply with the purposes of criminal punishment.  18 U.S.C. section 3553(a).  Imposing a sentence more severe than required to effectuate these purposes is thus prohibited by the Sentencing Reform Act.

The Sentencing Reform Act also further defines the legitimate purposes of sentencing.  Title 18 U.S.C. section 3551(a) requires that every defendant "shall be sentenced… so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553 (a)(2) to the extent that they are applicable in light of all the circumstances of the case."  Subsections (A) through (D)of section 3553(a)(2) directs courts to consider the necessity of the sentence to be imposed:

   (A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) To afford adequate deterrence from criminal conduct;
   (C) To protect the public from further crimes of the defendant;
   (D) To provide the defendant with needed educational or vocational training, medical care, or other, correctional treatment in the most effective manner.

It is extremely important to recall that all the factors, including the advisory guidelines, are subservient to Section 3553(a)'s mandate to impose a sentence not greater than necessary

to comply with the four purposes of sentencing. To impose a sentence more severe than required to effectuate these purposes is thus prohibited by the Sentencing Reform Act.

Thus, a sentence that maybe otherwise legal is improper if it is not, under a consideration of all the Section 3553 factors, reasonable.

As such, a sentence that maybe otherwise legal is improper if it is not, under a consideration of all the section 3553(a) factors reasonable. "Even a statutory maximum sentence must be analyzed using the section 3553(a) factors … Reasonableness is determined…by the district court's individualized application of the statutory sentencing factors." United States v Dorvee 604 F.3d. 84 (2nd Cir. 2010).

The Eastern District of New York, in Simon v U.S., 361 F. Supp2d 35 (E.D.N.Y. 2025), explicitly refused to give any greater weight to the Guidelines than any of the other enumerated factors, noting, "I adopt the view that the Guidelines are advisory and entitled to the same weight accorded to each other factor that the Court is instructed to consider by section 3553(a)." **Id.** at 40. The benchmark, the court concluded, now becomes one of reasonableness: "Any sentence imposed by this Court is cabined within the limits of reasonableness. It is this Court's function to determine, in light of all the factors provided in section 3553(a), the range of reasonable sentences applicable to this case, and where within that range [defendant's] sentence lies." **Simon v U.S**. supra at 40.

Our current sentencing scheme has thus been defined by Congress as possessing "four traditional justifications of the criminal sentence- deterrence, incapacitation, retribution, and rehabilitation." Congress has also "expressly instructed the sentencing court to keep these purposes in mind…" Kenneth R. Feniberg, The Federal Guidelines and the Underlying Purposes of Sentencing, 3 Fed Sent. Rep. 326, 326 (May/June 1991).

In so doing, courts must consider a number of factors, including: " the nature and circumstances of the offense and the history and characteristics of the defendant… the kinds of sentences available…[and] the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct… 18 U.S.C. 3553(a)(1),(3)-(7). A examination of each of these criteria shows that a sentence at the lowest end of the advisory guidelines would be reasonable.

The government's sentencing memorandum asserts that "the mandatory minimum" sentence for such an offense is an offense level of 19 and a criminal history category of 1, the guideline imprisonment range is 30 to 37 months. The offense level is the base offense level of 12 with a 6-level increase due to the defendant being a state actor, plus a 2 level increase for the victim being a vulnerable victim and a 2 level increase due to not being truthful during the defendant's interrogation for a total offense level of 22. From this level, a three level downward adjustment for the defendant's acceptance of responsibility was applied to bring considered level to a level 19 offense.

The government further states that the applicable guideline range is in Zone D of the Sentencing Table, and the minimum term shall be satisfied by a sentence of imprisonment.  USSG section 5C1.1(f).  The government further states that the Court may impose a period of supervised release of not more than three years.  18 U.S.C. section 3583(b)(2).  The government further states that the defendant is eligible for not less than one nor more than five years of probation because the offense level is a Class C Felony.  18 U.S.C. section 3561(c)(1).  One of the following must be imposed as a condition of probation unless extraordinary circumstances exist: fine, restitution, or community service.  The government states that since the applicable guideline range is in Zone D of the Sentencing Table, the defendant is ineligible for probation.  USSG section 5B1.1, comment (n.2) The fine range for the offense is from $10,000.00 to $100,000.00 pursuant to USSG section 5E1.2(c)(3).  The Court in determining whether to impose a fine or not, the court will consider the expected costs to the government for any term of probation, or term of imprisonment, and term of supervised release imposed.  USSG section 5E1.2(d)(7) and section 3572(a)(6).  The annual cost of federal imprisonment based upon the information from the advisory of the Administrative Office of the United States Courts dated October 25, 2023, is $49,770.00, supervision by Probation Officer is $4,387.00.

The victim has not provided the US probation department with any request for restitution, however said inmate, J.B. did commence a civil lawsuit vs the Defendant and the other involved CO's for redress.

The government, in Part E. FACTORS THAT MAY WARRANT DEPARTURE: have not identified any factors that would warrant a departure from the applicable sentencing guideline range.  In Part F. FACTORS THAT MAY WARRANT A SENTENCE OUTSIDE OF THE ADVISORY GUILDELINE SYSTEM: states that the defendant's sincere remorse for committing this crime and the defendants lack of any prior criminal history may warrant a sentence outside of the of Advisory Guidelines.

<u>IMPROPER ENHANCEMENT</u>

Defendant Rohail Khan's base offense level is calculated at a 23.  Said level should be decreased by 3 points for his prompt and timely acceptance of responsibility.  The defendant in timely accepting his responsibility has saved the government time and resources in not having to prepare for pre-trial proceeding or trial proceeding as against said defendant.  The Defendant has no criminal history, with the exception of this instant crime.  The defendant has never been arrested nor has he committed any offense or crime prior hereto.  With no criminal history, the defendant's criminal history category is a 1.

The Defendant is a minimal and/or minor participant in the instant offense, and as such the defendant respectfully requests that this Honorable Court consider a four level adjustment to said level (level 15), under section USSG 3B1.2.  The undersigned has read

the Presentence Investigation Report of Michael J Kester Chief US Probation Officer and Katherine E. Goodfellow U.S. Probation Officer and the undersigned respectfully disagrees with portions of said report which suggest that the Defendant Khan was more than a minor or minimal participant in the commission of said crime. At paragraphs 6 and 8 of said report, it states that the Defendant, Khan, who was unassigned to the particular housing unit, arrived on scene with CO Williams, and CO number 1, thus suggesting that the arrival of said CO's on said Unit was this defendant's idea. Such is not the case.

At that relevant time and date, it was CO Williams, who instructed Defendant Khan to follow him to Unit 4F. Defendant Khan, who followed said direction, did so with the understanding that he would be assisting CO Williams on a lawful task. As the probation officers had indicated, it was CO 1 who directed CO 3 to wake up the inmate and bring him out and placed the inmate on the wall.

The probation officers then state that the defendant Khan, Williams and CO 1 then physically assaulted the inmate. The undersigned takes issue with the order of the CO's who began to unlawfully assault the inmate. As written, one could conclude that it was the defendant, Khan who initiated the use of unlawful physical force against the inmate. It was NOT defendant Khan who initiated the unlawful assault on the inmate but rather this entire episode was orchestrated and initially executed by CO Williams, who has also been charged in this incident. Again, defendant Khan, is not trying to mislead this Court. He already has acknowledged his involvement in the same, and since said time has been trying to come to grips with why he did not exercise better judgment and stop the assault rather than follow his fellow officers in the same. Defendant Khan believes that given the environment within correctional facilities, where the employees are often ordered to work double and triple shifts, that they become mentally exhausted, and lose their proper judgment. This coupled with the realistic fear, that if a CO fails to follow the direction of a fellow officer, that he will face repercussions from his fellow officers in the future, which thus potentially places the CO in harm's way.

Defendant's conduct when compared with the other CO's conduct, although reprehensible, is relatively minimal and minor when compared to the organizer, CO Williams. The defendant's conduct is substantially less culpable than that of CO Williams, for the defendant, did make physical contact with the inmate's body through use of his hands and feet (kick), he did not do so with such force to inflict bodily pain to the inmate, Defendant Khan did so under the duress of his fellow officers, and out of fear of future repercussions. Further, the inmate did not fall to the ground while the defendant hit him as suggested in the report. As written, one might conclude that the defendant caused the inmate to go to the ground due to the kicks of the defendant, such is not the case. Further, this defendant did not step on inmate J.B's hand as suggest at paragraph 8 of the pre-sentence investigation report. The undersigned wishes to point out that the defendant Khan, DID NOT then parade the inmate through the unit and compel the inmate to publicly

announce his name and state why he was incarcerated.  Such conduct is completely attributed to the conduct of CO Williams who acted alone in compelling the inmate to disclose said information, knowing full well that convictions involving children will, in all likelihood prompt other inmate assaults on J.B..  As such, the comparison of actions of CO Williams compared to the defendant indicated that this defendant's role was minimal in comparison.  The minimal role renders the defendant substantially less culpable when compared to the prime actor, CO Williams.  This fact is born out, when this Court considers the fact that days after this CO assault, other inmates did in fact assault inmate J.B. with a lock in a sock, which caused injury to inmate J.B, which required medical care.   The inmate sustained a subconjunctival hemorrhage to his left eye, headache, dizziness, and inability to open his left eye.  These injuries were the result of being hit with the lock in the sock as opposed to this defendant striking or kicking the defendant in his torso . Thus, the Defendant respectfully requests a 4 level reduction to his offense level bringing his level to a 15.  With an offense level of 15, and a criminal history category of 1, would thus bring the offense to a 15 to 24 month period of incarceration, as opposed to the suggested 30 to 37 month sentence of incarceration.  USSG section 3B1.2.

      The defendant further is seeking a sentence of probation for such a sentence will achieve all the factors enumerated under 18 USC section 3553 (a)(2).  The defendant has been placed on administrative leave for his involvement in this crime.  The defendant has been named in a civil lawsuit against all involved CO's.  The defendant's ability to continue to pursue his chosen career path, given the fact that he will now have a felony conviction on his record, all will serve to deter any future illegal conduct by this defendant.  Such career impediment will also serve to incapacitate the defendant from any such future conduct for he will be barred from pursuing such a career in the future.  The defendant has sought out counsel for his indiscretion and to improve his mental health so to allow the defendant to better understand what he did was uncalled for, wrong, violative of departmental policy and illegal.  For a law-abiding citizen such as the defendant herein to accept the error of his choice has not been easy for the defendant to accept, but he acknowledges he must, for he did what he admitted to.

      It is extremely unlikely that this Court of the judicial system will ever see the defendant again as a defendant.  The likelihood of this defendant ever committing another offense is extremely UNLIKELY.  As such the defendant would be respectfully asking this Court to impose a sentence of probation for said isolated crime.

      Such a sentence would also be in line with a similar case involving a Utica Police Transport Officer who was called to a crime scene to transport a defendant to the station house in Utica, New York.  In said case, once the officer arrived on scene, the officer threw the mechanically restrained defendant into the rear of the transport vehicle, causing the defendant to land on the vehicle floor.  While on the floor, the Officer, who was acting under

the color of state law, began to stomp on the defendant's face and chest, which assault was captured on Body Worn Camera video. In said case, the defendant was in restraints. The defendant did receive a sentence of probation, even after forcing the government to present the case to a Grand Jury to obtain an indictment. In said case (<u>United States of America vs Matthew Felitto</u> 5:22-cr-00014 GTS), the defendant received a sentence of probation. The defendant has never worked in law enforcement again and has committed no additional offenses.

The defendant with this felony conviction will lose his job, be subjected to the civil lawsuit, together with his benefits and pension benefits being lost. The same is a deterrent to any further criminal activity by this otherwise law abiding defendant.

## SENTENCING RECOMMENDATION

As stated above, the guidelines are now advisory and not mandatory. Accordingly, the Court is not bound by the guidelines but may impose a sentence in accordance with the applicable considerations without regard to the guidelines and thereby arrive at a sentence which comports with the requirement that a sentence be reasonable.

A sentence is not reasonable merely because it is within the applicable guideline range. "We... decline to establish any presumption, rebuttable or otherwise, that a Guidelines sentence is reasonable." <u>United States v Fernandez</u> 443 F3d. 19, 33, (2nd Cir, 2006). See also, <u>United States v Goodwin</u>, 2007 WL 2045880 (holding that there is no presumption at the sentencing proceeding that a sentence within the guidelines range is reasonable."

A sentence outside the guidelines would be appropriate in view of the circumstances in this case. In addition, since the factors which were removed from consideration when the guidelines were mandatory may now be considered in fashioning the sentence, the background and character of the defendant must be considered for the purpose of imposing an appropriate sentence. See 18 U.S.C. section 3553(a)(1).

It is important to note that the conduct for which the defendant has pled guilty has never been committed prior to this instant offense. It is also important to note, that the conduct which the defendant has pled guilty to, is not typical of his normal conduct, as evidenced by the lack of any criminal history and/or any disciplinary history within DOCCS. This is the first, only and in all likelihood, the last time the defendant will ever be seen in the criminal justice system. The Sentencing Commission has explicitly authorized downward departure if the Defendant's criminal conduct constituted aberrant behavior, defining aberrant behavior as "a single criminal occurrence or a single criminal transaction that (a) was committed without significant planning; (b) was of limited duration; and (c) represents a marked deviation by the Defendant from an otherwise law-abiding life." (U.S.S.G. section

5k2.20). Here there is no prior criminal conduct on the part of the defendant. In <u>Zecevic v United States Parole Commission</u> 163 F3d. 731 (2nd. Cir. 1998) the court held that aberrant behavior is a short-lived deviation from an otherwise law-abiding life and the best test is the totality of the circumstances.

In addition, this court, has in prior similar cases, where a law enforcement officer was convicted via a plea to a violation of 18 U.S.C section 242, in the matter of the <u>United States vs Fellitto,</u> a law enforcement officer who utilized excessive force against a restrained suspect, received a sentence of probation supervision. This sentence was arrived at by the Court examining the totality of the circumstances surrounding that matter.

As such, it is respectfully submitted that further downward departure be applied for the aberrant behavior is appropriate in this matter which would justify a sentence of probation as being reasonable.

The Defendant has been taken out of work due to this charge, and in all likelihood will not be allowed to re-enter his chosen employment. Up to this instant offense/crime, the defendant was a hard-working correction officer, who was often the "go to" co-worker who gladly accepted additional shifts to provide the necessary supervision to accommodate the life factors of his co-workers who had to attend to personal family issues as well as to accommodate the holidays for his co-workers. The defendant has never been reprimanded or disciplined prior to this instant offense. The defendant has expressed deep remorse for his actions. The defendant appreciates the errors of his choices in the initial handling of this matter, and he has gained much clarity after admitting his guilt to the crime charged as well as seeking counseling for the same. The defendant acknowledges the seriousness of his conduct and appreciates the consequences of his conduct. He has acknowledged the mistake he has made and the devastating effect his conduct has had on the inmate, as well as how it has affected the defendant personal life. This remorse, coupled with the defendant's vow to correct the errors of this incident, and the effect this has had on his life, I submit is an effective deterrent from engaging in any further criminal conduct.

Rohail Khan has already been punished significantly for his actions and recognizes that his arrest for the present offense has affected his entire life and career choice. He is trying to continue to function as a productive member of society and now based upon this guilty plea and subsequent sentencing, will begin to seek a new professional career where his abilities, knowledge, and work experience will allow him to be a valuable asset in hopefully some law related occupation. This can be achieved if a sentence of probationary supervision is imposed. A sentence of incarceration would be a major setback in his chosen career path.

A consideration of the enumerated factors to be considered in arriving at an appropriate sentence makes it clear that the imposition of a sentence of probationary

supervision which falls below the low end of the Guideline range would be reasonable under the circumstances which satisfy the mandate that the sentence be "sufficient, but not greater than necessary" to achieve the sentencing goals. Given the defendant's personal history, his role in the community, his sincere remorse and acceptance of his responsibility, and his rehabilitative efforts, the purposes for sentencing as enumerated by the Sentence Reform Act can best be served by a sentence below the advisory guidelines range via a probationary supervision period, would satisfy the intent of Congress and the Courts.

9/3/25

David A. Longeretta Esq.

Attorney for Defendant Khan

Office and PO Address

298 Genesee Street

Utica, New York 13502

(315) 735-6162

TO:   Hon. Brenda Sannes

District Court Judge

Northern Dist. Of NY

Syracuse, NY

AUSA Michael Perry

AUSA Michael Gadarian

100 S Clinton Street

PO BOX 7035

Syracuse, NY 13261