IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | Criminal No.   5:24-CR-391 (BKS) |
| ) | |
| **v.** ) | **Government Sentencing Memorandum** |
| ) | |
| **ROHAIL KHAN,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |

The defendant is scheduled for sentencing on September 29, 2025, following his conviction by guilty plea to one count of deprivation of rights under color of law, in violation of 18 U.S.C. § 242. The government agrees with the facts, criminal history calculation, statutory sentencing parameters, and guideline calculation in the presentence investigation report ("PSR"). The government respectfully requests principally a sentencing within the defendant's resulting guideline imprisonment range.

**I.      Offense Background**

On April 14, 2023, the defendant, then employed by the New York State Department of Corrections and Community Supervision ("DOCCS") as a corrections officer, was on duty overnight at Mid-State Prison in Marcy, New York. PSR ¶ 6. Inmate J.B. (the "victim") was brought out of his housing unit for no justifiable reason around 1:00 a.m. *Id.* ¶ 7. The victim was surrounded by the defendant and three other corrections officers. *Id.* ¶¶ 7-8. The defendant and two of his fellow corrections officers – Brandon Montanari and Michael Williams (a trainee) – began punching and kicking the victim repeatedly. *Id.* The defendant's part of the assault involved repeated kicks to J.B.'s body, and, overall, the defendant and his fellow officers struck

the victim approximately 15-20 times.[1] *Id.* Before being allowed to go back to bed, the victim was paraded in front of other inmates and forced to reveal that his offense of conviction involved child sex abuse. *Id.* ¶ 9.

The following day, another inmate assaulted the victim with a hard and heavy object (believed to be a lock in a sock). *Id.* The victim was knocked unconscious and was sent to the hospital. *Id.* ¶¶ 9-10. He "reported a headache, dizziness, inability to open his left eyelid, pain, swelling, bleeding, and blurry vision," as well as "a left eye contusion, a half-inch contusion with minimal swelling behind his left ear, and a one-inch laceration on the right side of his scalp," along with "pain in both biceps, both thighs, and both sides of his ribs." *Id.* ¶ 11.

DOCCS undertook an internal investigation of the incident, and the defendant lied about his involvement in the assault. *See* Def. Sent. Mem. (dkt. 22 at ECF p.3). He was placed on unpaid leave. *Id.* ¶ 13.

## II. The Defendant Does Not Qualify for a Mitigating Role Reduction

United State Sentencing Guideline 3B1.2(a)-(b) provides for a reduction to the offense level of between two and four levels if the defendant was a "minor" or "minimal" "participant in [the] criminal activity[.]" Even assuming someone else had the initial idea of assaulting J.B., the defendant is not a "minimal participant" because he is not "substantially less culpable than the average participant in the criminal activity." *Id.* App. Note 3(A).

The guidelines point the Court to a list of five factors to consider in deciding whether to apply a reduction and, if so, how many levels between two and four to apply. Those factors are:

---

[1] The defendant claims that he did not step on J.B.'s hand as part of the assault. *See* PSR ¶ 8. This Court need not resolve that factual dispute unless it will impact the resulting sentence to be imposed. Fed. R. Crim. P. 32(i)(3)(B) (court may decline to resolve any sentencing dispute if it "determine[s] that a ruling is unnecessary . . . because the matter will not affect sentencing.").

(i) "the degree to which the defendant understood the scope and structure of the criminal activity;"; (ii) "the degree to which the defendant participated in planning or organizing the criminal activity;" (iii) "the degree to which the defendant exercise decision-making authority or influenced the exercise of decision-making authority;" (iv) "the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;" and (v) "the degree to which the defendant stood to benefit from the criminal activity."

Application of those factors to this Court shows that the defendant should not receive a mitigating role reduction because (i) he understood the scope and structure of the criminal activity before and during it (*i.e.*, at a minimum he knew a colleague intended to assault J.B. without justification and the defendant to back him up in that assault); (ii) he was part of the planning and organizing of the criminal activity (*i.e.*, he accompanied the other officers to the area where J.B. was brought from his housing unit knowing at a minimum that another corrections intended to assault J.B.); (iii) he exercised decision-making authority and influence over the corrections officer trainee whom the defendant claims thought up the assault; (iv) the defendant actively participated in the assault even assuming he pulled his kicks to some extent to avoid seriously injuring J.B. (a tactic, along with open hand slapping rather than close fist punching, that might reduce pain but also helps insulate the corrections officers from accountability); and (v) the defendant stood to benefit from the assault because it enabled him to buoy his status with other corrections officers.

### III. Sentencing Recommendation

A sentence of imprisonment within the defendant's resulting guideline range is warranted. The defendant knew it was illegal and dangerous to join a group assault on an inmate,

3

and he then about it to protect his career. Beyond the assault itself, the subsequent parading of the victim before his fellow inmates while forcing him to call out his crime of conviction was a functional green light to other inmates to attack the victim. Predicably but unfortunately, the next day an inmate violently assault, the victim with a weapon, resulting in the victim's hospitalization.

Corrections officers unquestionably work in a difficult, stressful, and even dangerous environment. Still, there is no excuse of the defendant's behavior, and the victim was fortunate to have escaped without even more serious injuries. Particularly troubling here is that the defendant was more senior than the man he claims came up with the idea of assaulting J.B., but the defendant did not dissuade the assault. Rather, he actively participated in it and then lied about it. Nor was this assault an excessive use of force in a situation where some force might have been appropriate. Instead, it was an entirely unjustified beating of a totally defenseless man.

JOHN A. SARCONE III
Acting United States Attorney

By:  */s/ Michael D. Gadarian*
*/s/ Michael F. Perry*

Michael D. Gadarian (Bar Roll No. 517198)
Michel F. Perry (Bar Roll No. 518952)
Assistant United States Attorneys